# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| ALICE F. COMPTON, | Case No.: 1:07-cv-984 |
| Plaintiff, | Magistrate Judge Timothy S. Black |
| vs. | |
| AT&T CORP., | |
| Defendant, | |

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 28)

This civil action is before the Court on Defendant's motion for summary judgment (Doc. 28) and the parties' responsive memoranda (Docs. 31, 35). The parties have consented to disposition by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(C). (Doc. 12).

## I. FACTS

Plaintiff, Alice F. Compton, began working for Defendant, AT&T Corp. ("AT&T"), in 1971. (Compton Depo., p. 55). She remained employed with AT&T until her layoff in December 2005. (Stewart Aff., ¶7).

During the last several years of her employment, Plaintiff worked as an assembler in the Database Group at the Cincinnati facility. (*Id*., ¶5). As an assembler in the Database Group, Plaintiff corrected faulty circuit information when AT&T's various databases encountered problems communicating with each other. (*Id*.; see, also Vogler Aff., ¶5).

Before Plaintiff's layoff in December 2005, there were four assemblers in the Database Group, all of whom had more than 20 years of seniority with AT&T. (Vogler Aff., ¶3). Plaintiff was the most senior assembler in the Database Group, and under a collective bargaining agreement, in the case of layoffs, the least senior employees were to be laid off first. (Vogler Depo., p. 75).

Beginning in 2001, Plaintiff began exercising her right to leave under the Family and Medical Leave Act ("FMLA") to cope with her diabetes. (Compton Depo., p. 78; Stewart Aff., ¶9). Between 2001 and 2005, Plaintiff requested and was granted FMLA leave for up to four days per month on an intermittent basis. (Stewart Aff., ¶9). Plaintiff's use of FMLA leave remained consistent during this time. (Compton Depo., p. 132; Vogler Depo., p. 55).

Near the end of her employment in 2005, Plaintiff reported to Gina Nash and Lori Stewart, both supervisors in the Database Group. (Stewart Aff., ¶¶1, 3; Vogler Depo., pp. 12-13). Nash and Stewart reported directly to Gina Vogler, the Director of Performance and Planning for the Global Service Assurance Organization ("Global Service Organization"). (Vogler Depo., p. 8, 12-13). During 2005, Vogler was under instructions by her superiors to reduce costs and increase operational efficiency across the Global Service Organization. (Vogler Aff., ¶6). In an effort to do so, throughout 2005, Vogler considered a reduction in workforce within the Database Group, including laying off at least part of the assembler staff in Cincinnati. (Vogler Depo., p. 24-27).

According to Plaintiff, around this same time in 2005, Nash and Stewart began growing resentful of her for taking FMLA approved absences. (Lorenz Depo., pp. 18-19). Sometime in 2005, Stewart began expressing concerns about Plaintiff's FMLA absences to Vogler. (Vogler Depo., pp. 48-53). Specifically, Stewart expressed "concern over workload management and [Plaintiff's] attendance, or her absences, and the effect on the workload management of the team." (Vogler Depo., pp. 48-49). Stewart also relayed to Vogler her suspicions that Plaintiff may have been abusing her FMLA leave by being absent only on Mondays and Fridays.[1] (Vogler Depo., pp. 51-53). At one point, Stewart requested that Plaintiff:

> have the nurse write down the time I walked in the doctor's office, the time I left and have the doctor write down what I was being treated for.

(Compton Depo., pp. 45-46).

In September 2005, Plaintiff made an internal complaint alleging age and disability discrimination against Stewart. (Vogler Depo., p. 99). The complaint came as no surprise to Vogler. (Vogler Depo., Exhibit 12, doc. no. 1801). In discussing the internal complaint with Karol Burnett-Quick, Vogler noted:

> Alice [Compton] does have diabetes and uses FLMA. She has a pattern of being absent on Monday or Friday for doctor appointments. Lori [Stewart] has been getting counsel and keeping Labor Relations informed.

---

[1] After a review by the "FMLA office," Stewart was informed that no "alarming patterns" appeared in Plaintiff's FMLA use. (Vogler Depo., p. 52).

-3-

(*Id*.; see, also, Vogler Depo., p. 104). Further, during her discussion with Burnett-Quick, Vogler stated her belief that the Database Group did not need four assemblers and, as a result, she instructed the Database Group managers "to conduct work studies" to determine the amount of work actually being performed. (Vogler Depo. Exhibit 12, doc. no. 1801). Thereafter, Vogler states:

> I will probably declare all 4 Assemblers "surplus". It might be less and if it is, Alice is one of the highest senior employees and she needs to be able to do the work that's left.

(*Id*.)

Although Vogler initially considered eliminating only two assembler positions in the Database Group, which would have left Plaintiff employed because of her seniority, Vogler ultimately determined it would be more cost-effective to eliminate all four assembler positions. (Vogler Depo., p. 24). According to Vogler, her final determination was based on a belief that all but a few hours of assembler work could be fully automated. (*Id*.) Vogler's final decision left Plaintiff laid off. (*Id*.)

## II. PROCEDURAL HISTORY

On December 4, 2007, Plaintiff filed this action. (Doc. 1). In her complaint, Plaintiff alleges that AT&T violated her rights under the Family and Medical Leave Act ("FMLA") when AT&T "chose to lay Plaintiff off from her employment because of her exercise of FMLA rights" and because AT&T's "decision to lay off Plaintiff was in retaliation for her exercise of her FMLA rights, in violation of 29 U.S.C. § 2615(a)(2)."

On February 16, 2009, AT&T moved for summary judgment. (Doc. 28). In its motion, AT&T argues that there is no causal connection between Plaintiff's layoff and her use of FMLA leave. Alternatively, AT&T argues that there is no evidence supporting a conclusion that AT&T's decision to lay Plaintiff off was pretext to FMLA retaliation.

In response, Plaintiff asserts that AT&T interfered with Plaintiff's FMLA rights when it considered Plaintiff's FMLA use as a negative factor when ultimately choosing to eliminate the assembler position, in violation of 29 C.F.R. § 825.220(C). (Doc. 31). In its reply, AT&T argues that Plaintiff failed to allege an interference claim in the complaint and should be barred from doing so at the summary judgment stage. AT&T further argues that, even if considered on the merits, Plaintiff's interference claim should also fail as a matter of law.

## III. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(C). See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

## IV. ANALYSIS

### A. FMLA Interference

FMLA's prohibition against interfering with an employee's FMLA rights prohibits employers from considering "the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions[.]" *Schmauch v. Honda of America Manufacturing, Inc.*, 295 F.Supp.2d 823, 830-831 (S.D. Ohio 2003) (quoting *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir.2001)); *see* 29 C.F.R. § 825.220(C); *see also Wysong v. Dow Chemical Co.*, 503 F.3d 441, 447 (6th Cir. 2007);.

To prevail on an interference claim under 29 C.F.R. § 825.220(C), a plaintiff must prove:

> (1) he is an "[e]ligible employee," 29 U.S.C. § 2611(2);
> (2) the defendant is an "[e]mployer," 29 U.S.C. § 2611(4);
> (3) the employee was entitled to leave under the FMLA, 29 U.S.C. § 2612(a)(1);
> (4) the employee gave the employer notice of his intention to take leave, 29 U.S.C. § 2612(e)(1); and
> (5) the employer denied the employee FMLA benefits to which he was entitled.

*Wysong*, 503 F.3d at 447. In a "negative factor" case, the fifth element may be satisfied

by proving "that the employer has 'somehow used the leave against her and in an unlawful manner, as provided in either the statute *or* regulations.'" *Id*. (quoting *Bradley v. Mary Rutan Hosp. Assoc.*, 322 F.Supp.2d 926 (S.D. Ohio 2004)).

Plaintiff "need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her." *Schmauch*, 295 F.Supp.2d at 831 (quoting *Bachelder* 259 F.3d at 1125); *Wysong*, 503 F.3d at 447. To do so, a plaintiff can use "either direct or circumstantial evidence, or both." *Schmauch*, 295 F.Supp.2d at 831. The burden-shifting framework, set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), is not required in such an analysis. *Schmauch*, 295 F.Supp.2d at 831.

### 1. *Whether Plaintiff's Claim of FMLA Interference is Sufficiently Plead*

AT&T argues initially that Plaintiff should be barred from asserting an interference claim at the summary judgment stage because her complaint failed to adequately set forth such a cause of action. In support of its short argument in this regard, AT&T argues that new claims cannot be presented in response to a motion for summary judgment, and cites *Tucker v. Union of Needletrades, Industrial & Textile Employees*, 407 F.3d 784 (6th Cir. 2005) in support.

In *Tucker*, plaintiff's complaint failed to set forth a claim of promissory estoppel. *Tucker*, 407 F.3d at 787. Instead, plaintiff argued a promissory estoppel claim in the district court for the first time in response to a motion for summary judgment. *Id*. at 788.

After the district court failed to consider the promissory estoppel claim on summary judgment, plaintiff appealed. *Id*. at 787. On appeal, the Sixth Circuit noted that "[e]ven construing the allegations in her complaint as generously as possible," the complaint could not be read to contain a promissory estoppel claim. *Id*. at 788. As a result, the Sixth Circuit concluded that the district court did not err in failing to consider the promissory estoppel claim. *Id*.

The *Tucker* case is distinguishable from this case. Here, the complaint alleges that AT&T "chose to lay Plaintiff off from her employment because of her exercise of her FMLA rights." (Complaint, ¶7). In a separate paragraph of the complaint, Plaintiff alleges that the "decision to lay off Plaintiff was in retaliation for her exercise of her FMLA rights, in violation of 29 U.S.C. § 2615(a)(2)." (*Id*., ¶9). Paragraph seven of the complaint can reasonably be read to allege that AT&T considered Plaintiff's use of FMLA leave as a negative factor when deciding to lay her off. Such a reading does not require a overly generous construction of the complaint. As a result, AT&T was "on sufficient notice that she was broadly alleging violations under 29 U.S.C. § 2615, and that her FMLA claim could encompass either the interference theory, the retaliation theory, or both theories." *Wysong*, 503 F.3d at 446.[2]

---

[2] The Sixth Circuit in *Wysong* further noted that "[a]lthough we analyze an FMLA claim based on the interference theory differently from one based on the retaliation theory, notice pleading does not box plaintiffs into one theory or the other at the complaint stage of an FMLA action." *Wysong*, 503 F.3d at 446

### 2. *Whether Genuine Issues of Material Fact Remain on Plaintiff's Interference Claim*

On the merits, the only disputed element is the fifth element, *i.e.*, whether AT&T considered Plaintiff's FMLA use as a negative factor when ultimately deciding to lay her off. Plaintiff presents sufficient evidence demonstrating an issue of fact in that regard.

It is undisputed that Vogler was the person who determined the ultimate reduction in force. (Vogler Depo., p. 24). At first, Vogler considered reducing the Database Group by two assemblers. (*Id.*, p. 57). If only two assemblers were laid off, Plaintiff would have remained employed in the assembler position because of her status as the most senior assembler. (*Id.*, p. 75).

Around the time Vogler was determining the extent of layoffs, Nash and Stewart began expressing frustrations over Plaintiff's intermittent FMLA leave. (Lorenz Depo., pp. 18-19). In 2005, Stewart began relaying her concerns about Plaintiff's FMLA absences to Vogler. (Vogler Depo., pp. 24, 48-53). Specifically, Stewart expressed to Vogler her "concern over workload management and [Plaintiff's] attendance, or her absences, and the effect on the workload management of the team." (*Id.*, pp. 48-49). Stewart also told Vogler of her suspicions that Plaintiff may have been abusing her FMLA leave by being absent only on Mondays and Fridays. (*Id.*, pp. 51-53). Further, Stewart began requesting documentation from Plaintiff evidencing the exact times of, and reasons for, Plaintiff's doctor appointments. (Compton Depo., pp. 45-46).

AT&T argues that Stewart's actions are not sufficient to show a causal connection between the layoff and Plaintiff's FMLA use because Stewart did not make the ultimate determination on how many assemblers to lay off. In support of this contention, AT&T cites several cases, notably *McDonald v. Union Camp. Corp.*, 898 F.2d 1155 (6th Cir. 1990) and *Noble v. Brinker Intern, Inc.* 391 F.3d 715, (6th Cir. 2004), for the proposition that Plaintiff must show that Stewart's animus toward Plaintiff can be imputed to the ultimate decision maker, *i.e.*, Vogler. AT&T contends that Stewart's animus cannot be imputed to Vogler because Vogler conducted an independent assessment before eliminating the assembler staff, and that no evidence suggests that Stewart's alleged suspicions and frustrations "tainted" Vogler's ultimate decision.

There is no dispute that Vogler was aware of Stewart's suspicions and frustrations concerning Plaintiff's use of FMLA leave. (Vogler Depo., pp. 48-53). Further, Vogler admitted that she relied on Stewart's and Nash's assessment that all of the assembler work could be automated. (*Id.*, pp. 28-29). In fact, the supervisors' automation assessment ultimately played a large role in Vogler's final decision to eliminate the entire assembler staff. (*Id.*, p. 24-25). Therefore, Vogler relied on Stewart to some degree in making the final decision.

Further, while Vogler testified that her decision to eliminate the entire assembler staff was based on cost-effectiveness and her belief that the assembler job could be automated, her telephone discussion with Burnett-Quick in September 2005 provides,

perhaps, some further insight into Vogler's decision-making process. (Vogler Depo. Exhibit 12, doc. no. 1801). During that conversation, Vogler noted that Plaintiff was diabetic and used FMLA. (*Id*.) Vogler also noted concerns that Plaintiff was possibly displaying "a pattern of being absent on Monday or Friday for doctor appointments." (*Id*.) Near the end of the call with Burnett-Quick, Vogler discussed the pending reduction of the assembler position, and stated:

> I will probably declare all 4 Assemblers "surplus". It might be less and if it is, Alice is one of the highest senior employees and she needs to be able to do the work that's left.

(*Id*.)

When construed as a whole, Vogler's statements to Burnett-Quick *could* potentially and reasonably be viewed an expression of concern over Plaintiff's FMLA leave and its effect on her ability to meet job demands following a partial reduction of the assembler staff. Thus, the information relayed by Vogler to Burnett-Quick creates an issue of fact as to whether Stewart's alleged animus tainted Vogler's decision.

As a result, after construing the evidence in a light most favorable to Plaintiff, a reasonable jury *could* conclude that Plaintiff's FMLA leave was a negative factor considered by Vogler in ultimately deciding to lay off Plaintiff. Accordingly, summary judgment in favor of AT&T on Plaintiff's interference claim is not proper and is denied.

## B. FMLA Retaliation

In its motion for summary judgment, AT&T argues that, under the burden-shifting analysis typically applied to FMLA retaliation claims, it is entitled to judgment as a matter of law because there is no evidence of a causal connection between Plaintiff's layoff and her use of FMLA leave. Further, AT&T argues that, assuming Plaintiff can establish a *prima facie* case of FMLA retaliation under a burden-shifting analysis, she cannot show that AT&T's allegedly non-discriminatory reason for the layoff was merely a pretext for retaliation.

Plaintiff does not directly address the burden-shifting analysis of a FMLA retaliation claim in her response. Instead, Plaintiff solely relies on the analysis applied by the Sixth Circuit in *Wysong*, 503 F.3d 441, as set forth above. Nevertheless, even if a burden-shifting analysis were employed, as argued by AT&T, material issues of fact would remain as to whether Plaintiff's FMLA leave was a determining and motivating factor behind AT&T's ultimate decision to lay Plaintiff off. *See Morris v. Family Dollar Stores of Ohio, Inc.*, No. 07-3417, 2009 WL 899894, at *4 (6th Cir. Mar. 31, 2009) (unpublished).

Generally, absent direct evidence of retaliation, "the court must apply the tripartite burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Gembus v. MetroHealth System*, 290 Fed. Appx. 842, 844 (6th Cir. 2008). "In order to make out a

*prima facie* case, a plaintiff must show that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) a causal connection existed between the adverse employment action and the protected activity." *Id*. at 844-845. The burden of establishing a *prima facie* case of retaliation is easily met. *EEOC v. Avery Dennison Co.*, 104 F.3d 858, 861 (6th Cir. 1997).

Here, Defendant only challenges the existence of a casual connection between the adverse employment action and Plaintiff's exercise of FMLA rights. In proving a causal connection between the exercise of a protected activity and an adverse employment action, a plaintiff need not prove that the exercise of FMLA rights was the *sole* reason for the adverse employment action. *Gibson v. City of Louisville*, 336 F.3d 511, 512-513 (6th Cir. 2003). Instead, plaintiffs must show "that requesting FMLA leave was only '*a* determining and motivating factor'" behind the adverse employment action. *Id*. at 514; *Heady v. United States Enrichment Corp.*, 146 Fed. Appx. 766, 769-770 (6th Cir. 2005) (stating that, on summary judgment, plaintiff "must provide sufficient evidence to show that the exercise of her FMLA rights was a motivating factor in her discharge").

Here, Plaintiff meets the low standard required for showing a *prima facie* case of FMLA retaliation. Nash and Stewart expressed frustrations over Plaintiff's intermittent FMLA leave. (Lorenz Depo., pp. 18-19). In 2005, Stewart began relaying her concerns about Plaintiff's FMLA absences to Vogler. (Vogler Depo., pp. 48-53). While Stewart was not the ultimate decision-maker, her animus *could* be attributed to Vogler. Volger

relied on Stewart to some degree in making the ultimate decision. (Vogler Depo., pp. 24-25, 28-29). Further, Vogler's September 2005 statement to Burnett-Quick creates an issue of fact as to whether Stewart's alleged animus regarding Plaintiff's FMLA leave tainted Vogler's decision. (Vogler Depo. Exhibit 12, doc. no. 1801).

"Once a *prima facie* case is established, the burden of producing some non-discriminatory reason falls upon the defendant." *DiCarlo v. Potter*, 358 F.3d 408, 420 (6th Cir. 2004) (citing *Williams v. Nashville Network*, 132 F.3d 1123, 1131 (6th Cir. 1997)). Even so, the ultimate "burden of persuasion remains with the plaintiff at all times." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008) (quoting *Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367, 377-378 (6th Cir. 2002)). "If the defendant demonstrates such, the plaintiff then assumes the burden of showing that the reasons given by the defendant were a pretext for retaliation." *DiCarlo*, 358 F.3d at 420 (quoting *Williams*, 132 F.3d at 1131). Here, Defendant provides a non-discriminatory reason behind its decision to layoff Plaintiff, *i.e.*, a reduction in workforce caused by a need to cut costs.

Because Defendant can point to a non-discriminatory reason for the layoff, Plaintiff must show that the non-discriminatory reason was merely a pretext. "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Mickey*, 516 F.3d at 526 (quoting *Dews v. A.B. Dick*

*Co.*, 231 F.3d 1016, 1021 (6th Cir.2000)). The "plaintiff must produce sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendants . . . did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action." *Id*. (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir.2001)).

Plaintiff apparently concedes that a reduction of some assemblers may have been justified by legitimate business reasons. However, she contends that a total reduction, which was the only way to lay her off, was based on her use of FMLA leave. Vogler was under no instructions to completely eliminate the assembler staff (Vogler Depo., p. 24-26), and Vogler, at one point, considered reducing the assembler staff by only two. (*Id*.) Vogler's September 2005 statements to Burnett-Quick, when construed as a whole, could reasonably be viewed as Vogler expressing concern that Plaintiff's FMLA leave could affect Plaintiff's ability to meet job demands following a partial layoff of the assembler staff. (Vogler Depo. Exhibit 12, doc. no. 1801).

Based on the above facts, a reasonable jury *could* conclude that Plaintiff's FMLA leave was a determining and motivating factor behind the ultimate decision to eliminate the entire assembler staff, and that AT&T's allegedly non-discriminatory reasons for the layoff are merely a pretext to retaliation. Accordingly, summary judgment in favor of AT&T on Plaintiff's retaliation claim is not proper and is denied.

## V. CONCLUSION

Wherefore, because genuine issues of material fact remain, Defendant is not entitled to judgment as a matter of law, and Defendant's Motion for Summary Judgment is hereby **DENIED**.

**IT IS SO ORDERED.**


**DATE:** June 25, 2009                          s/ Timothy S. Black
                                                                     Timothy S. Black
                                                                     United States Magistrate Judge